## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| Dr. Kenneth Taylor <br> 1668 Paris Oaks Road <br> Owings, MD 20736 <br><br> Plaintiff, <br><br> v. <br><br> Secretary Kathleen Sebelius <br> U.S. Department of Health & <br> Human Services <br> 200 Independence Ave, S.W. <br> Washington, D.C. 20201 <br><br> Defendant. | Civil No. 13-cv-1998-PWG ~~Civil Action No.~~ <br><br><br><br> **Jury Trial Demanded** |

## AMENDED COMPLAINT

Plaintiff, Dr. Kenneth Taylor, by and through undersigned counsel, herein states his amended complaint of discrimination and retaliation against Secretary Kathleen Sebelius, Secretary of the Department of Health and Human Services. Plaintiff states the following in support of his amended complaint to the best of his knowledge, information and belief, formed after an inquiry reasonable under the circumstances. On information and belief, Plaintiff states the following:

## PRELIMINARY STATEMENT

This is an action by Plaintiff, Dr. Kenneth Taylor ("Taylor" or "Plaintiff"), to seek redress for discriminatory and retaliatory actions, taken against him by the Defendant, Secretary

1

of Department of Health and Human Services, Kathleen Sebelius ("Defendant") in violation of Title VII, 42 U.S.C. § 2000e, *et seq.*

## PARTIES

1. Plaintiff, Taylor currently resides in Owings, MD.

2. Defendant does business and is located in the State of MD.

3. Defendant is properly named as the head of the agency in her official capacity pursuant to 42 U.S.C. § 2000e-16(c).

4. The Food and Drug Administration ("FDA") is an organization within the Department of Health and Human Services.

## JURISDICTION & VENUE

5. This is an action for declaratory relief, injunctive relief, back pay, compensatory damages and other appropriate relief, legal and equitable, brought by Plaintiff Taylor to redress violations by the Defendant of Plaintiff's civil rights. The jurisdiction of this Court is invoked to secure the protection of and to redress the deprivation of rights secured to Plaintiff by the Age Discrimination Employment Act which provides for injunctive, equitable and other relief against discrimination in employment on the basis of age and provides a cause of action for retaliation and reprisal. The jurisdiction of this Court is also invoked under 29 U.S.C. §621.

6. This action arises under the aforesaid Age Discrimination Employment Act.

7. All of the necessary administrative prerequisites have been met prior to filing the instant action, as Plaintiff has filed a timely complaint of discrimination and retaliation with his federal employer and brings this claim more than 180 days after he filed his complaint.

8. The actions complained of in the present case took place in College Park, Maryland. Plaintiff worked in College Park at times relevant to this complaint.

9. The employment records relevant to the unlawful practices are kept in Silver Spring, Maryland.

10. Defendant resides in this judicial district, and a substantial part of the events giving rise to this action took place within this judicial jurisdiction.

Therefore, this court has proper venue.

## FACTS

11. Plaintiff's date of birth is October 15, 1964.

12. Plaintiff was hired by Defendant sometime in 2001.

13. Plaintiff has held the position of GS-14 Chemist for the Defendant for approximately twelve (12) years.

14. Plaintiff worked for Defendant in the following units: Dietary Supplement Regulations Implementation Team (DSRIT), Dietary Supplement Programs (DDSP), Office of Nutrition, Labeling and Dietary Supplements (ONLDS), Center for Food Safety and Applied Nutrition (CFSAN).

15. Prior to July 18, 2011, Robert Moore was Taylor's first line supervisor.

16. Prior to July 2011, Daniel Fabricant ("Fabricant") was Taylor's second line supervisor.

17. As of July 18, 2011, Fabricant became Taylor's first line supervisor.

18. On October 31, 2011, Taylor filed an EEO discrimination complaint with the Agency's EEO and Civil Rights office.

19. Taylor filed said discrimination complaint in good faith, that he was being discriminated against based on his age.

20. On December 12, 2011, Taylor filed a formal discrimination complaint against the agency.
21. Taylor filed said formal discrimination complaint in good faith, that he was being discriminated against based on his age.
22. On March 14, 2011, Fabricant made derogatory comments to Taylor regarding his age.
23. On March 14, 2011, Fabricant made comments to Taylor regarding Taylor's age.
24. On March 14, 2011, Fabricant stated words to the effect of, "You have a problem with age."
25. On March 14, 2011, Fabricant stated words to the effect of, "someone who has been around as long as you have should have ideas."
26. On July 20, 2011, Fabricant scheduled a one on one meeting on Taylor's telecommuting day.
27. On July 20, 2011, Fabricant ignored Taylor's request to reschedule the meeting.
28. From July 20, 2011 to October 31, 2011, Taylor was forced to alter his work hours and telecommuting schedule to accommodate meetings set by Fabricant.
29. On October 27, 2011, Fabricant scheduled the weekly team meeting for 9:00 a.m.
30. Said meeting interfered Taylor's approved 9:15 arrival time.
31. On October 31, 2011, Fabricant scheduled the weekly team meeting for Mondays.
32. On October 31, 2011, Fabricant scheduled the weekly team meeting for Mondays, which at the time was Taylor's regular telework day.
33. Dr. Fabricant purposely scheduled weekly team meetings on a day he knew Dr. Taylor would be unable to attend because it was Dr. Taylor's telework day.

33.34. From August 2011 to October 2011, Taylor terms and conditions of employment were changed.

34.35. From August 2011 to October 2011, Taylor terms and conditions of employment were downgraded.

35.36. From August 2011 to October 2011, Taylor was assigned duties inconsistent with his GS-14 position.

36.37. From August 2011 to October 2011, Taylor was assigned duties consistent with a clerical employee of a grade 9/11.

37.38. From August 2011 to October 2011, Taylor was assigned duties that included receipt dating, assigning invoice numbers, entering requests into the database, preparing copies, printing addressing envelopes and mailings.

39. The assignment of duties inconsistent with his GS-14 position but rather consistent with a clerical employee of a grade 9/11 caused Taylor's skills to atrophy.

38.40. In August 2011, Taylor applied for a detail position of "Unclassified Duties," Advertisement Tracking Number (ATM): CDER-11-150-OCTEC.

39.41. The selecting official for said detail position was Karen D. Smith.

40.42. Ms. Smith received Taylor's application on or about August 29, 2011.

41.43. Ms. Smith noticed that Taylor did not receive the supervisory concurrence stated as required on the job announcement.

42.44. Taylor attempted to obtain his supervisor, Fabricant's supervisory concurrence for said job application.

43.45. Fabricant refused to provide his supervisory concurrence.

44.46. Taylor's application for said detail was not forwarded by Ms. Smith because it didn't have the necessary supervisory concurrence.

47. The application for CDER-11-150-OCTEC was not submitted because it did not contain Dr. Fabricant's supervisory concurrence, thereby causing Dr. Taylor not to obtain a prestigious detail.

48. On October 7, 2011, Corey Hilmas presented for the Association for Official and Analytical Chemists, Southern California Section and The United States Pharmacopeia (AOAC SCS & USP) conference held at FBA Irvine, California, under the direction of Daniel Fabricant.

49. Taylor was originally & specifically requested to speak at this conference by Sumit Sen, the conference organizer.

50. Taylor believes Daniel Fabricant denied Taylor the speaking opportunity and gave it to Corey Hilmas, who had only approximately 18 months experience compared to Taylor's 10 plus years regulatory knowledge and prior experience speaking on dietary supplement regulatory policy, because both Daniel Fabricant and Corey Hilmas are of comparable age.

51. On November 28, 2011, at a DSRIT meeting, Daniel Fabricant stated that Corey Hilmas was handling the response to a Citizen's Petition of the regulatory status of Pyridoxal-5-Phosphate (hereafter "PFP").

52. Robert Moore, Kenneth Taylor's former supervisor, had assigned the PFP project to Taylor in March 2011 and Taylor had previously initiated work to include performing background research and developing a Federal Register notice.

53. Developing the agency response for the PFP project was appropriate work and commensurate with Taylor's position description.

54. The PFP project is a prestigious, high profile matter because it determines if one of the natural forms of vitamin B6, P-5-P, is appropriate for use in dietary supplements.

55. On January 24, 2012, Fabricant intentionally sent and email to the entire Dietary Supplement Regulations Implementation Team showing them an alleged mistake Taylor made on an export certificate package.

56. Fabricant failed to contact Taylor prior to sending said email.

57. Said email was not accurate or true.

58. Said email was sent to publicly embarrass Taylor.

59. Said email was sent to disparage Taylor's professional reputation.

60. On January 27, 2012, Fabricant required Taylor to meet with him one –on-one without a witness in the room.

61. Given that Taylor had already filed a discrimination complaint against Fabricant and was suffering from Fabricant's actions, Taylor had sought counseling from the Agency's Employee's Assistance Program ("EAP").

62. An EAP counselor strongly advised Taylor that should Fabricant insist on meeting Taylor one-on –one, that Taylor should have a witness for that meeting.

63. On said date, Taylor specifically requested a witness, Linda Webb, for said conversation.

64. Taylor advised Fabricant of the EAP recommendation for a witness to be present.

65. Fabricant nonetheless refused to permit Taylor a witness for said meeting.

66.

67. In January, 2012, Fabricant notified Taylor that he selected Ramadevi Gudi for the Acting Team Leader detail that Taylor applied for.

68. As of January, 2012, Taylor had 11 years of FDA regulatory policy experience in dietary supplement work and Ms. Gudi had 18 months of experience in the same area.

69. On February 27, 2012, Fabricant allowed Corey Hilmas, an employee in his thirties to yell at Taylor unjustifiably during a team meeting in front of Taylor's colleagues.

70. Fabricant favored Hilmas over Taylor with respect to assignments.

71. Between February 24 and February 29, 2012, Fabricant assigned Taylor to data mine electronic files of documents, sort them electronically and email approximately 250 data files, which were assignments outside of Complainant's responsible duties.

72. All of the aforementioned actions and incidents detrimentally impacted Plaintiff's future career prospects.

73. Plaintiff has administratively exhausted his remedies.

74. On October 31, 2011 Plaintiff contacted an EEO counselor regarding complaints of age discrimination.

75. After the informal counseling session, Plaintiff filed a formal complaint, Agency Case No. HHS-FDA-CFSAN-014-12 on December 14, 2011. Plaintiff alleged discrimination on the basis of age (over 40); retaliation for prior protected activity; and a hostile work environment.

76. Plaintiff subsequently amended that charge during the investigation process. Plaintiff filed an Amended on March 13, 2012.

64.76. Plaintiff's original filed charge and amendments administratively exhausted the claims and counts alleged in the instant complaint.

65.77. On January 23, 2013 Plaintiff withdrew his hearing request and notified the EEOC that he wished to commence an action in Federal District Court. Over 180 days had passed between when Plaintiff filed his complaint and amended complaint and when Plaintiff filed the motion to withdraw the hearing request.

66.78. In or about March 25, 2013 the Administrative Judge remanded the case to the Agency for a final agency decision.

67.79. On April 19, 2013, Plaintiff's counsel received a copy of the Department of Health & Human Services, Office of Secretary, Final Agency Decision. The final agency decision dismissed Plaintiff's case and Plaintiff therefore had the right to file a complaint in Federal District Court.

## COUNT I – AGE DISCRIMINATION IN VIOLATION OF THE ADEA

Plaintiff hereby adopts and incorporates all aforesaid paragraphs as if herein and states:

68.80. The ADEA prohibits an employer from discrimination against an employee on the basis of age in the enjoyment of all compensation, privileges, terms, and conditions of employment.

69.81. At all times relevant to this Complaint, Defendant was an employer within the meaning of the ADEA. Furthermore, they aided, abetted, invited, compelled, and coerced the discriminatory conduct complained of herein in violation of the ADEA.

70.82. At all times relevant to this Complaint, Plaintiff was an employee within the meaning of the ADEA.

71.83. Defendants' actions as described above, with the exception of the selection of Ms. Ramadevi Gudi for the Acting Team Leader detail, were based on his age.

72.84. The aforesaid discriminatory treatment by Defendants toward Plaintiff caused tangible harm to Plaintiff in that it affected the terms, conditions, and privileges of his employment.

73.85. Other similarly situated employees not of Taylor's age group, were not subject to the same conditions of employment as Plaintiff.

74.86. A causal connection exists between Defendant's actions against Plaintiff described above and his age.

75.87. Defendants actions constituted a violation of the said ADEA statutes.

76.88. Defendant committed the above-mentioned acts willfully and with actual malice toward the Plaintiff.

89. As a result of Defendant's actions and omissions, Plaintiff suffered monetary and economic damages to his career.

90. Defendant's actions and omissions detrimentally impacted Plaintiff's future career prospects.

77.

## COUNT II - RETALIATION BASED ON THE ADEA

Plaintiff hereby adopts and incorporates all aforesaid paragraphs as if herein and states:

78.91. The actions taken against Plaintiff following his engaging in EEO activity in October, 2011, were motivated by the intent to retaliate against him for his complaints of discrimination.

79.92. The aforesaid retaliatory treatment by Defendant toward Plaintiff caused tangible harm to Plaintiff in that it significantly affected the terms, conditions and privileges of his employment.

80.93. Other similarly-situated employees who have not engaged in protected activity were not subject to the same conditions of employment as Taylor's.

81.94. Plaintiff's supervisors had knowledge of Taylor's prior protected activity.

82.95. Fabricant had knowledge of Taylor's prior protected activity.

83.96. A causal connection existed between Taylor's protected activity and tangible harm to the terms, conditions and privileges of Taylor's employment caused by Defendant.

84.97. Defendant's aforementioned conduct and statements reflected directly on a retaliatory attitude toward Plaintiff.

85.98. Defendant's aforementioned conduct and statements reflected directly on the contested employment decisions.

86.99. Defendant's actions constituted a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq*.

100. Defendant's aforementioned actions caused economic damages to the Plaintiff.

101. Defendant's actions and omissions detrimentally impacted Plaintiff's future career prospects.

87.

**COUNT III – HOSTILE WORK ENVIRONMENT IN VIOLATION OF THE ADEA**

11

Plaintiff hereby adopts and incorporates all aforesaid paragraphs as if herein and states:

102. The ADEA prohibits an employer from discrimination against an employee on the basis of age in the enjoyment of all compensation, privileges, terms, and conditions of employment.

103. At all times relevant to this Complaint, Defendant was an employer within the meaning of the ADEA. Furthermore, they aided, abetted, invited, compelled, and coerced the discriminatory conduct complained of herein in violation of the ADEA.

104. At all times relevant to this Complaint, Plaintiff was an employee within the meaning of the ADEA.

105. Defendant's harassment of Plaintiff was unwelcome.

106. Plaintiff made a number of complaints about Defendant's treatment of Plaintiff.

107. Plaintiff's supervisor made a number of derogatory comments to Plaintiff based on Plaintiff's age.

108. These comment's show that Defendant discriminated against Plaintiff based on his age.

109. Defendant engaged in behavior that was sufficiently severe and pervasive to alther the conditions of Plaintiff's employment.

110. Plaintiff was shut out of meetings, assigned to work menial tasks far below his grade level, subject to repeated derogatory comments about his age, refused to provide supervisor concurrence on Plaintiff's application, denigrated Plaintiff to Plaintiff's coworkers, cornered Plaintiff into meetings refusing to allow him a witness and denied Plaintiff a promotion.

111. These actions were based on Plaintiff's age and were continuing in nature.

12

98.112. The above actions altered the terms and conditions of Plaintiff's employment and created an abusive atmosphere.

99.113. Plaintiff complained about Plaintiff's supervisor's behavior.

100.114. Defendant was on notice of Plaintiff's supervisor's treatment of Plaintiff.

101.115. Defendant failed to take appropriate steps to abate Plaintiff's supervisor's treatment of Plaintiff.

102.116. Defendant is liable for Plaintiff's supervisor's actions.

103.117. Plaintiff's supervisor has the power to hire, fire, promote, discipline and take employment actions with respect to Plaintiff.

104.118. Plaintiff has suffered economic and non-economic damages.

119. Defendant's actions constituted a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.*

120. Defendant's actions and omissions detrimentally impacted Plaintiff's future career prospects.

105.

## RELIEF

WHEREFORE, Plaintiff seeks the following relief:

a. Economic damages for the losses that he suffered due to the discriminatory and retaliatory actions.

b. Full instatement of Acting Team Leader.

c. Full instatement into the aforementioned detail.

13

d.	An order directing that Defendant be prohibited from downgrading Plaintiff's duties, inconsistent with his GS-14 duties, in the future

e.	An order directing Defendant to pay reasonable attorney's fees and costs of this litigation.

f.	Such other and further relief as the Court may deem just.

Respectfully Submitted,

_____

Morris E. Fischer, Esq.
Law Office of Morris E. Fischer, LLC
1400 Spring Street
Suite 350
Silver Spring, MD 20910
(301) 328-7631 phone
(301) 328-7638 fax
Attorney for Plaintiff

## REQUEST FOR JURY TRIAL

Plaintiff requests a trial by jury on all matters properly tried to a jury.

Respectfully Submitted,

_____

Morris E. Fischer, Esq.
Law Office of Morris E. Fischer, LLC
1400 Spring Street
Suite 350
Silver Spring, MD 20910
(301) 328-7631 phone

(301) 328-7638 fax
Attorney for Plaintiff