**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|                                                                 |   |                        |
|-----------------------------------------------------------------|---|------------------------|
|                                                                 | * |                        |
| **KENNETH TAYLOR,**                                             | * |                        |
|     **Plaintiffs,**                         | * |                        |
| **v.**                                                          | * | **Case No.: PWG-13-1998** |
|                                                                 | * |                        |
| **SYLVIA MATHEWS BURWELL,**[1]                                  | * |                        |
|   **Secretary, U.S. Dep't of Health & Human Services,** | * |                      |
|                                                                 | * |                        |
|     **Defendant.**                          | * |                        |
|                                                                 | * |                        |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION[2]

Plaintiff Kenneth Taylor brings this case under the Age Discrimination in Employment Act ("ADEA") alleging discrimination, hostile work environment, and retaliation against his employer, the Food and Drug Administration. Defendant Secretary of Health and Human Services has moved to dismiss for failure to state a claim, arguing that Plaintiff has not shown any age bias or adverse employment action, and suffered nothing more than the irritation and inconveniences typical of many workplaces. Plaintiff has opposed the motion and also has sought leave to amend his complaint. Because I agree with Defendant with respect to Plaintiff's claims for discrimination and hostile work environment, the motion to dismiss will be granted

---

[1]      Secretary Burwell automatically is substituted for former-Secretary Sebelius, pursuant to Fed. R. Civ. P. 25(d). The Clerk will be ordered to reflect this substitution on the docket.

[2] This Memorandum Opinion disposes of (1) Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment, ECF No. 8, and supporting Memorandum, ECF No. 8-1; Plaintiff Kenneth Taylor's Opposition, ECF No. 16, and Corrected Opposition, ECF No. 17-1; and Defendant's Reply, ECF No. 18; and (2) Plaintiff's Motion for Leave to File An Amended Complaint, ECF No. 15; and Defendant's Opposition, ECF No. 19.

with respect to those claims and Plaintiff's proposed amendment will be denied as futile. However, because Plaintiff has alleged a plausible claim for retaliation, and has sought to add additional relevant allegations in his amendment, Plaintiff's retaliation claim will be allowed to proceed and the complaint amended with respect to that count.

## I.    BACKGROUND

For the purposes of considering Defendant's motion, this Court accepts the facts that Plaintiff has alleged in his Complaint as true. *See Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011).[3]  Plaintiff Kenneth Taylor is a chemist who was born on October 15, 1964.  Compl. ¶¶ 11, 13, ECF No. 1.  He has worked for the Food and Drug Administration (the "FDA"), an agency within the U.S. Department of Health and Human Services, since 2001, *id.* ¶ 12, and at the time he filed his Complaint, had held the position of GS-14 Chemist for approximately twelve years, *id.* ¶ 13.  While at the FDA, Taylor worked in various units, including the Dietary Supplement Regulations Implementation Team ("DSRIT"); Dietary Supplement Programs ("DDSP"); Office of Nutrition, Labeling, and Dietary Supplements ("ONLDS"); and the Center for Food Safety and Applied Nutrition ("CFSAN").

On March 14, 2011, Taylor's "second line supervisor," Daniel Fabricant, made two remarks that Taylor perceived as "derogatory comments . . . regarding his age."  *Id.* ¶¶ 22–25. Specifically, Fabricant told Taylor, "'You have a problem with age,'" and said that "'someone who has been around as long as you have should have ideas.'"  *Id.* ¶¶ 24–25.

---

[3] Because most of the amendments sought by Taylor are futile and will not be permitted, *see infra* Part IV, I will rely on Taylor's original Complaint for the facts, and not on his proposed Amended Complaint, Pl.'s Mot. to Am. Ex., ECF No. 15-1.

On July 18, 2011, Fabricant took over as Taylor's "first line supervisor." Two days later, on July 20, 2011, Fabricant scheduled a one-on-one meeting with Taylor on Taylor's usual telecommuting day and "ignored Taylor's request to reschedule the meeting." *Id.* ¶¶ 26–27. "From July 20, 2011 to October 31, 2011, Taylor was forced to alter his work hours and telecommuting schedule to accommodate meetings set by Fabricant." *Id.* ¶ 28. This included a meeting on October 27, 2011, that began fifteen minutes before Taylor's usual, 9:15 a.m. arrival time and, on October 31, 2011, scheduling a weekly team meeting for Mondays even though that was Taylor's usual telework day. *Id.* ¶¶ 29–32.

In August 2011, Taylor applied for a position designated "'Unclassified Duties,' Advertisement Tracking Number (ATM): CDER-11-150-OCTEC." *Id.* ¶ 38. To apply for the position, Taylor required a supervisory concurrence from Fabricant, his supervisor. *Id.* ¶ 41. Although Taylor sought Fabricant's concurrence, Fabricant refused to provide it and, as a result, Taylor's application was not referred to the selecting official for the position. *Id.* ¶ 41–44.

Also during this time, Taylor alleges that he was assigned clerical work inconsistent with his pay grade. From August 2011 to October 2011, Taylor "was assigned duties that included receipt dating, assigning invoice numbers, entering requests into the database, preparing copies, printing addressing envelopes and mailings," which were duties usually assigned to "a clerical employee of a grade 9/11" and not to an employee of GS-14 like Taylor. *Id.* ¶¶ 35–37. Taylor does not allege that his pay or title was changed in connection with these responsibilities.

On October 31, 2011, Taylor filed a discrimination complaint "with the agency's EEO and Civil Rights office" *id.* ¶ 18, claiming that he was being discriminated against on the basis of his age, *id.* ¶ 19. On December 12, 2011, Taylor filed a formal discrimination complaint, also alleging age discrimination, against the FDA. *Id.* ¶¶ 20–21.

Thereafter, on January 24, 2012, Fabricant "intentionally sent an[] email to the entire Dietary Supplement Regulations Implementation Team showing them an alleged mistake Taylor made," without first informing Taylor. *Id.* ¶¶ 45–46. The information in the email was false and was sent with the intent publicly to embarrass Taylor and to "disparage [his] professional reputation." *Id.* ¶¶ 47–49. On January 27, 2012, Fabricant refused to allow Taylor to bring a witness to a one-on-one meeting even though a counselor from the FDA's Employee Assistance Program had advised him to bring a witness and Taylor had requested one. *Id.* ¶¶ 50–55.

Around that same time, Taylor had applied for an Acting Team Leader detail but, in January 2012, Fabricant selected another employee, Ramadevi Gudi, instead of Taylor. *Id.* ¶ 55. At that time, Taylor had eleven years of "FDA regulatory policy experience in dietary supplement work" and Gudi had only eighteen months of similar experience. *Id.* ¶ 56.[4]

"Between February 24 and February 29, 2012, Fabricant assigned Taylor to data mine electronic files of documents, sort them electronically, and email approximately 250 data files, which were assignments outside of [Taylor's] responsible duties." *Id.* ¶ 59. During that same period, on February 27, 2012, "Fabricant allowed Corey Hilmas, an employee in his thirties to yell at Taylor unjustifiably during at team meeting in front of Taylor's colleagues." *Id.* ¶ 57. Fabricant also favored Hilmas more generally in making assignments. *Id.* ¶ 58.

On March 13, 2012, Taylor amended his charge of age discrimination that he had filed in December 2011. *Id.* ¶ 63. On January 23, 2013, Taylor withdrew the hearing request submitted with his formal complaint and informed the EEOC that he wished to proceed in federal district court. *Id.* ¶ 65. On April 19, 2013, Taylor received the final decision from the Secretary of

---

[4]      I note that Taylor has not alleged that Gudi was younger than him and, in fact, Defendant has asserted that Gudi is older than Taylor. Def.'s Dismiss Mem. 14, ECF No. 8-1.

Health and Human Services, dismissing Taylor's charge and informing him of his right to sue. *Id.* ¶ 67.

Taylor commenced this case by filing his three-count Complaint in this Court on July 10, 2013, alleging (I) age discrimination under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq.; (II) retaliation under the ADEA; and (III) hostile work environment under the ADEA.

Defendant, the Secretary of Health and Human Services, filed a Motion to Dismiss, or in the Alternative, for Summary Judgment ("Def.'s Mot. to Dismiss"), ECF No. 8, along with a supporting Memorandum ("Def.'s Dismiss Mem."), ECF No. 8-1, on November 13, 2013. Taylor has opposed the motion ("Pl.'s Dismiss Opp'n"), ECF No. 16, and the next day filed an Errata to Plaintiff's Memorandum of Points and Authorities in Support of Plaintiff's Opposition to Defendant's Motion to Dismiss, ECF No. 17, attaching what appears to be a corrected Opposition ("Pl.'s Corr. Dismiss Opp'n"), ECF No. 17-1 and Defendant has replied ("Def.'s Dismiss Reply"), ECF No. 18.

Simultaneous with his opposition, Taylor also filed a Motion for Leave to File an Amended Complaint ("Pl.'s Mot. to Am."), ECF No. 15,[5] seeking to add certain factual allegations including, most significantly, an allegation that Fabricant refused to allow Taylor to take a speaking opportunity that he was offered and a desirable work assignment and, instead, assigned both to Hilmas, Redlined Am. Compl., Pl.'s Mot. to Am. Ex., ECF No. 15-2.

---

[5] The parties requested, and were granted, two extensions to Taylor's time to respond to the motion to dismiss, Orders, ECF No. 10 & 14, and his opposition was filed timely over a month after Defendant filed her motion.  But because Taylor did not seek additional time to amend his complaint as a matter of course, that twenty-one-day deadline was not extended and Taylor correctly has sought leave before amending his complaint. *See Hayes v. District of Columbia*, 275 F.R.D. 343, 345 (D.D.C. 2011).

Defendant has opposed the Motion to Amend ("Def.'s Am. Opp'n"), ECF No. 19.  Taylor has not replied and the time to do so has passed.  Loc. R. 105.2(a).

Both motions are ripe and now are before me.  Having reviewed the filings, I find a hearing is not necessary.  Loc. R. 105.6.

## II.    STANDARD OF REVIEW – MOTION TO DISMISS

Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted."  *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012).  This rule's purpose "'is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)).  To that end, the Court bears in mind the requirements of Fed. R. Civ. P. 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), when considering a motion to dismiss pursuant to Rule 12(b)(6).  Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79.  *See Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

Where a defendant files a motion styled as one to dismiss or, in the alternative, for summary judgment, it "implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure."  *See Sager v. Hous. Comm'n*, 855 F. Supp. 2d 524, 542 (D. Md. 2012).

Pursuant to Rule 12(d), where "matters outside the pleadings are presented to and not excluded by the court," a motion to dismiss must be treated as one for summary judgment and all parties must be given an opportunity to present evidence on their behalf. Fed. R. Civ. P. 12(d). Styling a motion as one to dismiss or, in the alternative, for summary judgment is sufficient to provide notice to all parties that the motion may be converted to one for summary judgment. *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998).

However, "a district judge has 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." *Sager*, 855 F. Supp. 2d at 542 (quoting 5C Charles Alan Wright et al., *Federal Practice & Procedure* § 1366, at 159 (3d ed. 2004, 2011 Supp.)). "This discretion 'should be exercised with great caution and attention to the parties' procedural rights.' In general, courts are guided by whether consideration of extraneous material 'is likely to facilitate the disposition of the action,' and 'whether discovery prior to the utilization of the summary judgment procedure' is necessary." *Id.*

## III.   DEFENDANT'S MOTION TO DISMISS

### A.  Defendant's 12(d) Motion

At the outset, Defendant has attached exhibits to her Motion to Dismiss and asks that I treat the motion as one for summary judgment under Fed. R. Civ. P. 12(d). *See* Def.'s Mot. to Dismiss Exs. 1–3, ECF Nos. 8-2 to 8-4. However, I retain discretion to determine whether it is appropriate to convert a 12(b)(6) motion into a motion for summary judgment. *Sager v. Hous. Comm'n*, 855 F. Supp. 2d 524, 542 (D. Md. 2012). And "[o]rdinarily, summary judgment is not appropriate 'where the parties have not had an opportunity for reasonable discovery.'" *Id.*

Here, summary judgment would be particularly inappropriate.  The exhibits attached by Defendant do not establish the lack of a genuine issue of material fact.  Defendant has attached a copy of Taylor's discrimination complaint from 2012, Def.'s Mot. to Dismiss Ex. 1, a letter dismissing that complaint, Def.'s Mot. to Dismiss Ex. 2, and an affidavit from Fabricant addressing some of Taylor's claims, Fabricant Aff., Def.'s Mot. to Dismiss Ex. 3.  In addition to attaching exhibits of his own, Taylor has filed a Rule 56(d) affidavit stating that he needs the opportunity to conduct discovery into, *inter alia*, whether Fabricant had legitimate, nondiscriminatory justifications for his actions with respect to Taylor.  *See* Rule 56(d) Aff., Pl.'s Dismiss Mem. Ex., ECF No. 16-9.

"Notably, '"Rule 56(d) affidavits cannot simply demand discovery for the sake of discovery."'  'Rather, to justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be "essential to [the] opposition."'"  *Sager*, 855 F. Supp. at 543 (citations omitted) (emendation in original).  Taylor has spoken only in general terms about what discovery he would like to conduct, and has not clearly linked that discovery with material issues of fact he expects to uncover.

But because the development of the facts at this point—and the presentation of facts by the movant—has been minimal, I find that conversion under Rule 12(d) would not be appropriate here in any event.  Accordingly, I will not convert the motion to one for summary judgment, and will treat it only as a motion to dismiss.

### B.  Count I : Age Discrimination

Under the ADEA, an employer may not, *inter alia*, "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  Count I of Taylor's complaint alleges employment discrimination under the ADEA.  To establish a case of discrimination, a plaintiff

must allege "(1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) less favorable treatment than similarly situated employees outside the protected class." *Linton v. Johns Hopkins Univ. Applied Physics Lab., LLC*, No. JKB-10-276, 2011 WL 4549177, at \*5 (D. Md. Sept. 28, 2011) (citing *White v. BFI Waste Servs.*, 375 F.3d 288, 295 (4th Cir. 2004)).  As a threshold issue, it is clear that Taylor has alleged that he is a member of a protected class.  He alleges that he was born on October 15, 1964, Compl. ¶ 11, and therefore was over forty at all times relevant to the Complaint, *see* 29 U.S.C. § 631(a) (restricting applicability of the ADEA to "individuals who are at least 40 years of age").  However, Defendant argues that none of the allegedly discriminatory actions alleged in the Complaint qualify as "adverse employment action" for the purposes of the ADEA.  Def.'s Dismiss Mem. 6.  "An adverse employment action is a discriminatory act that 'adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment.'"  *Holland v. Wash. Homes, Inc.*, 487 F.3d 208. 219 (4th Cir. 2007) (quoting *James v. Booz–Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004) (emendation in original)).  "An action that merely causes an employee irritation or inconvenience, but does not affect a term, condition, or benefit of her employment, is not an adverse employment action."  *Spriggs v. Pub. Serv. Comm'n*, 197 F. Supp. 2d 388, 393 (D. Md. 2002).

Taylor does not allege that he was fired, demoted, or had his pay reduced.  Compl.  He expressly states that the fact that he did not receive the position of Acting Team Leader is not a basis for his claim.  Compl. ¶ 71.  And in Taylor's Corrected Opposition Memorandum, he concedes that requiring him to change his telework schedule or arrival time to attend meetings was not an adverse employment action.  *See* Pl.'s Corr. Dismiss Opp'n 3 n.1; *see also Parsons v. Wynne*, 221 F. App'x 197, 198 (4th Cir. 2007) (holding that removal from an alternate work

schedule was not adverse employment action for purposes of Title VII).   The only adverse

actions that he appears to allege were Fabricant assigning Taylor work below his pay grade, *id.* at

589, and Fabricant's refusal to provide a supervisory concurrence to Taylor's application for the

"Unclassified Duties" position, *id.* at 8–9.

The allegation that Taylor temporarily was assigned clerical work below his pay grade

for three months in 2011 and for six days in early 2012, *see* Compl. ¶¶ 35–37, 58, does not

support a claim for discrimination.   "The mere fact that a new job assignment is less appealing to

the employee [] does not constitute adverse employment action."   *James v. Booz–Allen &*

*Hamilton, Inc.*, 368 F.3d 371, 376 (4th Cir. 2004).   "[A]bsent any decrease in compensation, job

title, level of responsibility, or opportunity for promotion, reassignment to a new position

commensurate with one's salary level does not constitute an adverse employment action . . . ."

*Boone v. Goldin*, 178 F.3d 253, 256 (4th Cir. 1999).   Taylor does not allege that he was demoted

or that his pay was decreased, or even that he officially was reassigned, but only that he

temporarily received less desirable duties while retaining his existing title and salary.

Nevertheless, he asserts that the time he spent doing clerical work is actionable because it caused

his "skills to atrophy and reduce[d] future career prospects."   Pl.'s Corr. Dismiss Opp'n 6 (citing

*Herrnreiter v. Chi. Hous. Auth.*, 315 F.3d 742, 744–45 (7th Cir. 2002).

Courts regularly have found that temporary changes to an employee's workload or to the

tasks he is assigned do not constitute an adverse employment action.   *See, e.g.*, *Grimsley v.*

*Marshalls of MA, Inc.*, 284 F. App'x 604, 2008 WL 2435582, at *4 (11th Cir. 2008) ("Although

Grimsley's workload sometimes increased and he was occasionally assigned additional tasks,

these kinds of temporary assignments, without a change in compensation or position, do not

amount to a 'serious and material change in the terms, conditions, or privileges of

employment.'"); *McCants v. AT&T Corp.*, No. 04-74905, 2005 WL 3071840, at *2 (E.D. Mich. Nov. 14, 2005) (noting that although plaintiff had alleged genuine adverse actions, the fact that she was assigned clerical tasks was not an adverse action).   And this case easily is distinguishable from *Allen v. Napolitano*, in which the court declined to dismiss a discrimination claim that alleged that the plaintiff was being "excluded from certain meetings *relevant to her job*."  943 F. Supp. 2d 40, 45 (D.D.C. 2013) (emphasis added).   Unlike Allen, Taylor does not allege that he was being barred from performing his job properly, but only that he was above the work that was assigned to him.   Although he claims that a brief period of clerical work has dulled his abilities and harmed his prospects, he has not "identif[ied] any materially adverse consequences" such as "effects on [his] grade level, salary, or promotion opportunities."   *Id.* Accordingly, this does not constitute an adverse employment action.

With respect to the supervisory concurrence, even assuming that Fabricant's actions could be an adverse employment action, Taylor simply has failed to state a claim for discrimination.   First, although he vociferously maintains that Fabricant's failure to provide a supervisory concurrence was the reason why he did not receive consideration for the Unclassified Duties position, *see* Compl. ¶ 44; Pl.'s Corr. Dismiss Opp'n 8, he does not allege or argue that the refusal to provide a concurrence was the result of age discrimination, *see* Compl ¶¶ 38–44; Pl.'s Corr. Dismiss Opp'n 8.  And as discussed *infra*, Fabricant's isolated comments in March 2011 are not sufficient to create an inference of discrimination in any event—much less to show that, but for Taylor's age, he would have provided the concurrence.  *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009) ("the plaintiff retains the burden . . . to establish that age was the 'but-for' cause of the employer's adverse action").   Second, Taylor also has not alleged that other, similarly situated employees did receive supervisory concurrences from Fabricant

under similar conditions.  *See Causey v. Balog*, 162 F.3d 795, 802 (4th Cir. 1998) (affirming dismissal of ADEA discriminatory discharge claim where there was no indication that plaintiff's position was offered to similarly situated individuals who were not members of the protected class).

Moreover, 29 C.F.R. § 1614.105(a)(1) requires an ADEA plaintiff to "initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action."  The Complaint alleges that Taylor's application for the Unclassified Duties position was received on August 29, 2011, Compl. ¶ 40, but that Taylor did not contact an EEO counselor until October 31, 2011, Compl. ¶ 61, well over forty-five days from the alleged discriminatory act.[6]   Accordingly, dismissal also is appropriate because Taylor did not pursue his administrative remedies in a timely fashion.  *Landino v. Sapp*, 520 F. App'x 195, 198 (4th Cir. 2013) (affirming dismissal of claims not asserted within forty-five days).

### C.  Count III: Hostile Work Environment

To state a hostile work environment claim under the ADEA, a plaintiff "must allege that (1) []he experienced unwelcome harassment; (2) the harassment was based on [his] . . . age; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the

---

[6]     Defendant argues that the relevant date for purposes of calculating the forty-five-day period was March 14, 2011, when Fabricant made his allegedly discriminatory utterances. Def.'s Dismiss Mem. 13.  However, it appears that Fabricant's alleged refusal to provide a concurrence was a separate, independent action that started its own forty-five-day period running.  Taylor argues in his Corrected Opposition that he was within forty-five days because he had a conversation with Fabricant as late as September 1, 2011, Pl.'s Corr. Dismiss Opp'n 8–9, and that he did not learn that he did not receive the position until "the end of September," *id.* However, these allegations do not appear in the current Complaint, nor do they appear in the Amended Complaint that Taylor seeks leave to file.  *See* Redlined Am. Compl.

employer." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). Defendant argues that Taylor has not alleged that any alleged harassment was based on his age or that it was sufficiently severe or pervasive to state a hostile work environment claim. Def.'s Dismiss Mem. 19–21. Taylor does not provide a substantive response to Defendant's arguments, but conclusorily states, in a footnote, that "Plaintiff easily meets this test." Def.'s Dismiss Opp'n 6 n.2.

With respect to the second prong, "[i]t is axiomatic that a plaintiff's mere speculation as to racial or gender animus will not suffice to prove that []he suffered unwelcome conduct due to" membership in a protected class. *Alexander v. U.S. Dep't of Veterans Affairs*, No. DKC-10-3168, 2012 WL 78874, at *5 (D. Md. Jan. 10, 2012).

Taylor attempts to pin his hostile work environment claim on two statements made on the same day by Fabricant when he was Taylor's second line supervisor: "'You have a problem with age,'" and "'someone who has been around as long as you have should have ideas.'" Compl. ¶¶ 24–25. According to Taylor, these comments were "derogatory," *id.* ¶ 22, and they "show that Defendant discriminated against Plaintiff based on his age," *id.* ¶ 94. However, Taylor's allegations support no such conclusion. The mere statement that "someone who has been along as [Taylor has] should have ideas" shows no animus at all—at the most, Taylor's allegations suggest that his age was discussed in relation to his job experience and abilities, and this cannot suffice to allege a discriminatory motive. *Cf. Khoury v. Meserve*, 268 F. Supp. 2d 600, 613 (D. Md. 2003) (questioning plaintiff about her background and when she learned English while criticizing her writing ability was, at most, circumstantial evidence insufficient to support an inference of discrimination); *see also Iqbal*, 556 U.S. at 663 (requiring plaintiff to plead sufficient factual content to allow for an inference that defendant is liable). The statement that

Taylor "ha[s] a problem with age" is less clear, but I still do not find that a single, isolated comment—particularly in the absence of any context imbuing it with significance—can support a finding of age bias, much less that that bias animated a pervasive course of discriminatory actions by Fabricant. *Compare Denio v. Asplundh Tree Expert Co.*, 92 F.3d 1177, 1996 WL 423125, at *4 (4th Cir. 1996) (unpublished table decision) ("Statements that merely make observations of a generational change without suggesting that older employees ought to be replaced by more youthful ones are not sufficient to infer discrimination."), *with Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (describing a hostile work environment as one "permeated with 'discriminatory intimidation, ridicule, and insult'" (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986)). "Moreover, statements about age may well not carry the same animus as those about race or gender. Unlike race or gender differences, age does not create a true we/they situation—barring unfortunate events, everyone will enter the protected group at some point in their lives." *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 512 (4th Cir. 1994).

In any event, Taylor states that he "does not allege that the subject discriminatory comments are direct evidence of discrimination." Pl.'s Corr. Dismiss Opp'n 9–10. And the fact that both of Fabricant's comments were made several months before he became Taylor's first line supervisor further diminish their significance. *See Birkbeck*, 30 F.3d at 511–12.

And even if Taylor had alleged that Fabricant's conduct was motivated by age bias, Taylor has not alleged harassment or discriminatory conduct that was "severe and pervasive," a demanding standard designed to "filter out complaints attaching 'the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

14

Taylor alleges a course of harassment over several months that included having to alter his telecommuting schedule or come to work fifteen minutes early to attend meetings, Compl. ¶¶ 26–32, being assigned duties below his pay grade, *id.* ¶¶ 35–37, 58, being publicly and improperly called out for an alleged error, *id.* ¶¶ 45–49, being yelled at once during a meeting, *id.* ¶ 57, and receiving less favorable assignments and treatment than other coworkers, *id.* ¶¶ 50–58.   However, the conduct alleged by Taylor is quite similar to the facts alleged in a recent Fourth Circuit case, *Buchhagen v. ICF Int'l, Inc.*, 545 F. App'x 217 (4th Cir. 2013).  In that case, the plaintiff alleged that her supervisor created a hostile work environment by:

> "mockingly" yelling at [plaintiff] in one meeting; yelling and pounding her hands on her desk during another meeting; "repeatedly harp[ing]" on a mistake made by [plaintiff] in October 2009; making "snide comments" to [plaintiff]; playing favorites with employees and pitting employees against each other; and unfairly scrutinizing and criticizing [plaintiff's] use of leave and compliance with [her supervisor's] directives.

*Id.* at 219.  The Fourth Circuit upheld the dismissal of the plaintiff's complaint, observing not only that these allegations were "conclusory and lack sufficient factual support," but that "[i]n any event, the conduct alleged falls far short of being severe or pervasive enough to establish an abusive environment."  *Id.*  Accordingly, Count III of Taylor's complaint, alleging a hostile work environment, must be dismissed.

### D.  Count II: Retaliation

The ADEA also makes it "unlawful for an employer to discriminate against any of his employees . . . because such individual . . . has opposed any practice made unlawful" by the ADEA.  29 U.S.C. § 623(d).  To succeed on a retaliation claim, "a plaintiff must show that (1) he was engaged in protected activity, (2) the defendant acted adversely against him, and (3) . . .

there was a causal connection between the first two elements." *Banhi v. Papa John's USA, Inc.*, No. RWT-12-665, 2013 WL 3788573, at *7 (D. Md. July 18, 2013).

Taylor alleges that he contacted an EEO counselor initially on October 31, 2011, Compl. ¶ 61, and filed a formal complaint on December 14, 2011, *id.* ¶ 62.   Defendant concedes that Taylor has satisfied the first element of a retaliation claim, Def.'s Dismiss Mem. 15, but argues that the allegedly retaliatory actions taken by Fabricant do not constitute "adverse employment action" sufficient to support a finding of retaliation.   *Id.*   The Supreme Court has rejected the notion that the basis for a retaliation claim must "adversely [affect] 'the terms, conditions, or benefits' of the plaintiff's employment,"   *Von Gunten v. Maryland*, 243 F.3d 858, 865 (4th Cir. 2001), *abrogated by Burlington N. and Sante Fe Ry. Co. v. White*, 548 U.S. 53 (2006), and instead has instructed that "[t]he scope of the antiretaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm."   *Burlington N. and Santa Fe. Ry. Co. v. White*, 548 U.S. 53, 67 (2006) (abrogating *Von Gunten v. Maryland*, 243 F.3d 858, 863 (4th Cir. 2001) (requiring proof of adverse *employment* action)).   Rather, all that is required is that the action be one that "a reasonable employee would have found . . . materially adverse, 'which in this context means it might well have "dissuaded a reasonable worker from making or supporting a charge of discrimination."'"  *Id.* at 68 (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)); *see also Caldwell v. Johnson*, 289 F. App'x 579, 592 (4th Cir. 2008) (applying same standard to federal employees).   In contrast, "normally petty slights, minor annoyances, and a simple lack of good manners will not create such deterrence.")  *Id.*

Materially adverse actions in the retaliation context have included those that may not have been sufficiently adverse to support a discrimination claim.   For example, the Fourth Circuit has approved of claims based on the denial of sick leave, *Wells v. Gates*, 336 F. App'x

378, 385 (4th Cir. 2009), threats combined with altering an employee's performance expectations and attempts to replace an employee while on sick leave, *Maron v. Va. Polytechnic Inst. & State Univ.*, 508 F. App'x 226, 230–31 (4th Cir. 2013), or revoking funds that previously had been promised, *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 352 (4th Cir. 2011).  In contrast, not responding to an employee's phone calls, assigning difficult work, and requiring a pregnant employee to walk were found to be only trivial harms insufficient to support a retaliation claim.  *Brockman v. Snow*, 217 F. App'x 201, 206–07 (4th Cir. 2007).

Taylor alleges at least five possible actions that he argues were retaliatory: (1) forwarding an e-mail to the DSRIT team showing a mistake Taylor had made; (2) refusing to allow Taylor to bring a witness to a one-on-one meeting; (3) passing over Taylor for an Acting Team Leader detail; (4) assigning Taylor clerical work over six days in February; and (5) allowing Hilmas to yell at Taylor at a meeting.  Compl.

At least three of these alleged actions simply cannot support a claim for retaliation. Publicly calling Taylor out for a single alleged mistake—even if, as alleged, the criticism was inaccurate, Compl. ¶ 47—and allowing another employee to yell at Taylor on one occasion are not the sorts of harms that would dissuade an employee from reporting discrimination.  "An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience."  *White*, 548 U.S. at 68.  Similarly, I cannot discern how Taylor was harmed by Fabricant's insistence on meeting with him one-on-one, rather than allowing a witness, where there is no indication that anything inappropriate transpired at that meeting.  *See* Compl. ¶ 53–55.

However, reassigning an employee to undesirable work, which Taylor appears to allege occurred between February 24 and 29, 2013, Compl. ¶ 59, can under some circumstances be

sufficiently adverse to support a retaliation claim.  *See Barnabas v. Bd. of Trustees*, 686 F. Supp. 2d 95, 105–06 (D.D.C. 2010) (finding that a reduction in duties could support a retaliation claim).  And although the denial of an Acting Team Leader position, Compl. ¶ 55, cannot be the basis of a discrimination claim, *see Bruder v. Chu*, 953 F. Supp. 2d 234, 240 (D.D.C. 2013) ("'[D]enial of an acting position—without showing some further harm—does not by itself qualify as an adverse employment action.'" (quoting *Glenn v. Williams*, No. Civ. A. 98-1278(CKK), 2006 WL 401816, at *17 (D.D.C. Feb. 21, 2006)), I am not convinced that, in the wake of *Burlington Northern*, being denied a desirable position could not be the basis for an ADEA *retaliation* claim.

With respect to causation, Taylor's only allegation is that the allegedly retaliatory acts occurred within four months after he lodged his age discrimination complaint.  "While this proof far from conclusively establishes the requisite causal connection, it certainly satisfies the less onerous burden of making a prima facie case of causality."  *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989) (plaintiff made out a prima facie case of retaliation where she was terminated within four months after filing discrimination charge).

Accordingly, Taylor's retaliation claim can survive a motion to dismiss by a mere hair's breadth and Defendant's motion will be DENIED with respect to Count III.

## IV.    Motion for Leave to Amend

In addition to opposing Defendant's Motion to Dismiss, Taylor has sought leave to amend his complaint.  Pl.'s Mot. to Am.  Fed. R. Civ. P. 15(a)(2) provides that the "court should freely give leave [to amend] when justice so requires."  "Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it

is merely an abuse of that discretion and inconsistent with the spirit of the Federal Rules."
*Foman v. Davis*, 371 U.S. 178, 182 (1962).  The Fourth Circuit has explained that leave to
amend should be denied "'only when the amendment would be prejudicial to the opposing party,
there has been bad faith on the part of the moving party, or the amendment would have been
futile.'"  *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006).  Defendant argues that the
proposed amendment should be denied as futile.  Def.'s Am. Opp'n.

Taylor seeks to add several allegations to his complaint, specifically that:

- Fabricant purposely scheduled meetings for days when he knew Taylor was
  unable to attend because they were his telework day, Redlined Am. Compl. ¶ 33,
  Pl.'s Mot. to Am. Ex. 2, ECF No. 15-2;

- Being assigned clerical work "caused Taylor's skills to atrophy," *id.* ¶ 39;

- The reason why Taylor was not given the Unclassified Duties position was
  because Fabricant did not provide a supervisory concurrence, *id.* ¶ 47;

- In October 2011, Hilmas was directed to speak at a convention in California even
  though Taylor specifically had been requested to speak at that conference and
  Taylor believes that decision was made because Hilmas is closer in age to
  Fabricant than Taylor is, *id.* ¶¶ 48–50;

- In November 2011, Fabricant reassigned to Hilmas a prestigious project that
  Taylor had been working on, *id.* ¶¶ 51–54.

Several of these allegations do nothing to remedy the shortcomings of the original
Complaint.  As I explained above, it simply was not an adverse employment action to schedule
meetings at a time that was inconvenient for Taylor.  *See supra*.  Although Taylor continues to
focus on the link between Fabricant's failure to provide a supervisory concurrence and his not

being awarded the Unclassified Duties position, he still has failed to allege that Fabricant's

failure was the result of discrimination. *See supra*. And the allegation that being assigned

clerical work caused the skills that Taylor had acquired over a decade to atrophy over the space

of three months, in addition to being dubious, also is conclusory and provides no indication

either of how Taylor's skills atrophied during this short period or that such atrophy had any

effect on his job prospects. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals

of the elements of a cause of action, supported by mere conclusory statements, do not suffice."

(citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

The mere fact that Hilmas was sent to speak at the convention in California, without

more, also does not support a claim for age discrimination. "An action that merely causes an

employee irritation or inconvenience, but does not affect a term, condition, or benefit of her

employment, is not an adverse employment action." *Spriggs v. Pub. Serv. Comm'n*, 197 F.

Supp. 2d 388, 393 (D. Md. 2002). It does not appear that simply not being sent to a conference

affected a term, condition, or benefit of Taylor's employment. And in any event, the mere fact

that Fabricant may have favored Hilmas does not, without more, translate into discrimination

against Taylor on the basis of age. *See Sales v. Dep't of Justice*, 549 F. Supp. 1176, 1182

(D.D.C. 1982) ("Yet, even assuming plaintiff's supervisors did have favorites, that fact alone

does not translate into discrimination against the plaintiff on the basis of his . . . age."). And

because the convention occurred before Taylor lodged his EEO complaint at the end of October

2011, the decision cannot have been retaliatory.

In contrast, although it is not clear that removing Taylor from a particular project in

November 2011 would qualify as an adverse employment action for the purposes of a

discrimination claim, it occurred less than a month after Taylor's EEO complaint. *See supra*.

This would allow for a presumption that it was retaliatory and, for the reasons discussed above, removing Taylor from desirable work could constitute actionable retaliation. Accordingly, adding this allegation to the complaint is not futile and Taylor must be permitted to amend his complaint with respect to it. Although the majority of Taylor's Motion to Amend must be DENIED, it must be GRANTED with respect to Count II.

## V.      CONCLUSION

Accordingly, Defendant's Motion to Dismiss will be GRANTED with respect to Counts I and III, and otherwise DENIED; Plaintiff's Motion to Amend will be GRANTED with respect to Count II, and otherwise DENIED.

Defendant SHALL HAVE twenty-one (21) days to answer the Complaint.

In addition, the Clerk SHALL SUBSTITUTE Secretary Burwell as the Defendant pursuant to Fed. R. Civ. P. 25(d).

A separate order shall issue.

Dated: July 16, 2014                                   _____/S/_____
                                                        Paul W. Grimm
                                                        United States District Judge
dsy