# AFFIDAVIT

**STATE OF:** Maryland

**COUNTY OF:** Prince Georges

I, Corey J. Hilmas, MD, PhD, make the following statement freely and voluntarily to Sylvia D. Drummond, who has identified herself to me as a Contract EEO Investigator for the Department of Health and Human Services, Food and Drug Administration, investigating a complaint of discrimination filed by Kenneth Taylor (hereinafter, Complainant), knowing that this statement may be used in evidence. I understand that this statement is not confidential and may be shown to the interested parties (those with a legal right to know). I hereby solemnly swear or affirm:

**1. What are your full name, current position title, grade, and organizational units (from smallest to largest)?**

Corey J. Hilmas, Acting Team Leader, Dietary Supplements Implementation Team (DSRIT), Dietary Supplement Program (DDSP), Office of Nutrition Labeling and Dietary Supplements (ONLDS), Center for Food Safety and Applied Nutrition (CFSAN), Food and Drug Administration (FDA).

**2. Who are your first and second-level supervisors, by name and position title?**

My first level supervisor is Daniel Fabricant, PhD, Director, DDSP, ONLDS, CFSAN. My second level supervisor is Barbara Schneeman, Director ONLDS, CFSAN, FDA.

**3. What was your organizational relationship with Complainant?**

I am the Complainant's Acting Team Leader; however, I do not have supervisory responsibility over the Complainant. I am on an Acting Detail position in DS RIT as the Team Leader.

**4. How long have you been in your current position?**

In approximately October 2011, I joined the DSRIT. I have worked for the FDA since April 2010.

**5. Provide your age, date of birth, and indicate whether you have previously participated in EEO protected activity.**

I am 39 years old; my date of birth is March 27, 1973. I have not previously filed an EEO complaint or participated in protected activity.

**6. Do you have any knowledge of the selection process for the detail position of Team Leader, NDI?**

I do not have direct information regarding the selection process for the NDI Team Leader position. I am aware that the selectee, Dr. Gudi, is approximately 58 years old. Dr. Gudi and I both worked as GS-14 senior level toxicologists together on the New Dietary Ingredients Review Team, and I am aware of her experience, knowledge and background as a toxicologist and in management outside the Agency at Bioreliance, a premier contract laboratory. Dr. Gudi previously worked for Bioreliance and has many years of experience in work that involves managing a staff of employees and running multi-million dollar GLP toxicology studies. Dr. Gudi and I were the primary FDA NDI staff employees who were responsible for drafting regulatory guidance for the New Dietary Ingredients Draft Guidance for Industry, and evaluating comments from the public and industry.

**7. Do you have any information about the background of the person who previously held the position as Team Leader for the NDI Team? Was he a toxicologist?**

Dan Levy, the previous Team Leader, is a microbiologist and gene toxicologist with some additional experience in general toxicology.

**8. Are you familiar with the office's practice/policy concerning obtaining supervisory concurrence before submitting applications for details? If so, please explain.**

I have no specific information regarding the policy/practice of obtaining supervisory concurrence prior to submitting an application for a detail. However, I believe that everyone should know that they are free to apply. I also added in my interview with Ms. Drummond that I have never been discouraged from applying to a detail. I have never been apart of any team meeting (either in the DS Regulation Implementation Team or the NDI Review Team) where others were discouraged from applying. In DDSP and ONLDS, employees are actually encouraged to apply to details to gain extra experience. We are sent Agency-wide emails on detail opportunities.

**9. Are you familiar with a January 24, 2012 email from Dr. Fabricant to members of DSRIT, in which an error was pointed out regarding the preparation of a CoFS?**

Yes, I believe I was on the distribution list for that particular correspondence. Dr. Fabricant did not call anyone out in that email by name. To this day, I do not know or care who made a mistake. Everyone makes mistakes. It is a matter of taking appropriate measures to correct those mistakes in a timely fashion as a conscientious employee.

**10. Are you aware of instances when errors made by a DSRIT team member, or any employees in CFSAN, were circulated to the entire team? If so, please explain.**

I do not recall specific instances. Any time a mistake has been done by myself or another member, I would like to know about it because I could make the same mistake. It serves as a learning tool for everyone in the group. I have attending every single DS RIT meeting, and I can recall no instance where Dr. Fabricant called someone out specifically regarding a mistake. We use those meetings to discuss issues the come up from time to time. I do recall an instance where I called myself out in a meeting. I explained to the group that I did not mail an original (signed) "To Whom It May Concern" letter with each Certificate of Free Sale by accident to a firm, the firm called me up to tell me the error, and I explained to the group why it was necessary to have an original rather than a photocopy of the "To Whom It May Concern Letter". It was helpful and a learning tool for everyone.

**11. Do you have any reason to believe that Dr. Fabricant is motivated to publically embarrass Complainant or otherwise discriminate against him based on age, reprisal or any other discriminatory reason?**

No. I have no reason to believe this would be true. I do not see any discriminatory intent. I know Dr. Gudi is a female, a minority, a woman of color, and someone with experienced credentials, and she was made the acting Team leader for the NDI Review team.

**12. Is Complainant assigned clerical duties in connection with his responsibilities in the CoFS program?**

Processing CoFS is a compliance task; it is not menial work. Staff members are required to perform label reviews and write letters based on those reviews. A secretary could not do the duties of a label reviewer. When I worked directly with Dr. Moore, the previous DSRIT Team Leader, I processed both 30-Day Structure Function Notices and requests for Certificates of Free Sale (CoFS), from June to October 2011, and I did it alone. These CoFS were processed and mailed by myself. I did not assign these duties to anyone else. Furthermore, the Complainant was tasked with writing a written response to the P-5-P petition (discussed later on). Neither tasks are clerical in nature.

The Complainant was appointed as the project manager for CoFS in early November. During the first quarter of the fiscal year, the Complainant assigned the bulk of the review work to me. I have provided evidence from the quarterly report for CoFS work assigned during that time. I did feel the Complainant was trying to give me the "lion's share" of the work, but I did not complain about it. As someone who adapts to the work that needs to be completed, I am not a complainer type of personality. During the second quarter, the Complainant assigned the bulk of the review work to Dr. Gudi when she was brought over to the DS RIT team.

**13. Do you have any reason to believe that the assignment of these duties to Dr. Taylor was discriminatory? Please explain.**

: 00130

No. The Complainant is a project manager for assigning CoFS tasks equitably (even distribution) to the rest of the team. Everyone on the DS RIT team works on those Certificates of Free Sale. As I previously stated, staff members who process CoFS are performing important work. Writing correspondence letters to industry with each CoFS request requires an application of the law governing dietary supplements. We have to come up with language to address unique sets of circumstances sometimes. We have to evaluate disease claims made on labels which is not trivial. We have to evaluate labels for misbranding charges. All of those items are summarized in an untitled letter to the firm who sent the original request for a CoFS. It is not a trivial task by any means.

**14. Please respond to Complainant's allegation that you receive the more desirable assignments (high profile and substantive). Do you believe that you are assigned work that Complainant should be performing? Explain your answer.**

No, I do not believe I was assigned work the Complainant should be performing. I was not assigned the task to write the P-5-P citizen petition. I was not designated as the Project Manager for Certificates of Free Sale. Those were very substantive work elements tasked to the Complainant. I perform label reviews in my everyday tasks very similar to label reviews for Certificates of Free Sale. All of the Consumer Safety Officers in the DS RIT team must perform label reviews on dietary supplement products as part of their job. That is what we were hired to do. Some of us do label reviews for 30-Day Structure Function Notices, Certificates of Free Sale, for detained imports, etc. All of that work is vital to the functioning of our Division to provide program office support to FDAs Field Offices and headquarters.

**15. Do you know whether Dr. Taylor currently has "substantive" policy work to perform? Explain.**

**Yes, Kenneth Taylor is the project manager for assigning work related to requests for Certificates of Free Sale export. As discussed previously, this work is germane because it involves the application of our statute to perform an in-depth label review for misbranding charges, violations of 801(e) of our statute, an investigation of disease claims made on labels, and generating an untitled letter to the responsible firm of our findings. That is the definition of "substantive" policy work. The Complainant was also assigned the task of writing a response to the P-5-P petition that is discussed in this very complaint. We only had one major petition last year that I am aware of and that was substantive policy work.**

**16. Complainant alleged that he was invited to present at the Association of Official Analytical Chemists (AOAC) Southern California Section (SCS) United States Pharmacopeia (USP) Conferences in October 2011. However, you were designated to attend instead. Is this true? If so, why were you designated rather than Complainant?**

Dr. Fabricant spoke with the conference organizer about the conference and what topic they wanted our organization to discuss during the conference. Because of the recently released NDI Draft Guidance for Industry, the conference organizer told Dr. Fabricant that they wanted a regulatory update on the New Dietary Ingredients Draft Guidance. Since both Dr. Gudi and I had drafted the NDI guidance document for industry as Team members of the NDI Review Team, and Dr. Gudi was not available to present, Dr. Fabricant designated me to present at the conference.

**17. The Complainant alleged that you have been assigned a project (P-5-P) which was originally assigned to him? Is this true?**

I did not take over completing the project. This was a project that the Complainant completed. The Complainant completed a project, which was to formulate a written response to a firm's petition on P-5-P, a compound similar to pyridoxamine. Since I had experience with getting approval for the NDI draft guidance and had coordinated with other CFSAN Offices to get that document through the approval process, Dr. Fabricant assigned me the task of walking that written response to the P-5-P petition through the CFSAN approval process by walking it over to the various administrative offices involved in its 'sign off'. I did not revise, rewrite, or change anything anything that the Complainant completed on the project.

**18. Are you aware of employees, other than Complainant, who have been required to change their telework days because of scheduled staff meetings?**

Yes. Staff members work various AWS/telework schedules. When folks "telework" two days from home, it is difficult for everyone in the DS RIT team to meet together in person to discuss CFSAN work. If I teleworked, I would be asked to change my schedule around, and I would have no problem doing that. Because everyone else works 2 days from home, I have had to change my schedule around. I used to work every other Friday from home, but since joining the DS RIT team, I had to change my alternate work schedule around and come in everyday because that would ensure that all of us could meet together one day a week.

**19. Have you witnessed Dr. Fabricant and Complainant interact with each other? If so, please provide your characterization of the interaction, friendly, cordial, professional, etc. Do you have any reason to believe that Dr. Fabricant has discriminatory animus based on age or reprisal for an employee complaining about discrimination?**

Initials CJH

: 00132

I have attended every DS RIT meeting and many other meetings involving the CAPS online program, and I believe Dr. Fabricant treats him the same way that he treats everyone else in the Division. Dr. Fabricant is always respectful to everyone. He says "Hi" to the Complainant in the halls and asks him how things are going. Dr. Fabricant is the consummate professional. I do not believe Dr. Fabricant is discriminating the Complainant in any way.

**20. Do you believe that Dr. Fabricant is subjecting Complainant to a hostile work environment based on age and/or reprisal?**

No, I do not believe that Dr. Fabricant is subjecting the Complainant to a hostile work environment.

**21. Please respond to the Complainant's allegation that you subjected him to a hostile work environment when you allegedly yelled at him during a February 27, 2012 meeting. (Dr. Fabricant and Ms. Constance Hardy were also present during the meeting.)**

I do not believe I subjected the Complainant to a hostile work environment. We discussed what portions we should review in Certificates of Free Sale as it pertains to the CoFS SOP in place. I brought up the fact that we need to evaluate requests for CoFS in accordance with 801(e) of the statute as the export certificate SOPs at the Agency describe. I did not yell at the Complainant.

**21. Is there anything you would like to add?**

I have read this statement, consisting of ___7___ pages, and it is true, complete, and correct to the best of my knowledge and belief.

_____
Signature

7 May 2012
Date

Signed and sworn to before me
on this _____ day of _____, _____,
at _____.

Page 6 of 7                                                                                             Initials CJH

: 00133

_____
Neutral witness, notary, or Investigator

## PRIVACY ACT NOTICE TO EEO COMPLAINT INTERVIEW WITNESSES
## (OTHER THAN COMPLAINANT)
## FOR DISCRIMINATION COMPLAINT INVESTIGATION INTERVIEW

### GENERAL

This information is provided pursuant to Public Law 93-579 (Privacy Act of 1974), December 31, 1974, for individuals supplying information for inclusion in a system of records.

### AUTHORITY

The authority to collect the information requested by affidavit, statement or other type of testimony is derived from one or more of the following:

Title 5, Code of Federal Regulations, Sections 5.2 and 5.3; Title 29, Code of Federal Regulations, Section 1613/1614; Title 5, United States Code, Sections 1303 and 1304; Title 42, United States Code, Section 2000e-16; and Executive Order 11478, as amended.

### PURPOSES AND USES

The information you supply will be used along with data developed to resolve or otherwise determine the merits of the equal employment opportunity (EEO) complaint of discrimination and/or reprisal. This information may be furnished to designated officers and employees of agencies and departments of the Federal Government in order to resolve or otherwise determine the merits of the EEO complaint of discrimination and/or reprisal. The information may also be disclosed to any agency of the Federal Government having a working relationship with regard to EEO Commission activities, or to others for uses as published in the Federal Register.

### EFFECTS OF NON-DISCLOSURE

Disclosure of the information sought is voluntary; however, failure to furnish the information will result in a direction by the head of the agency, or his/her designated representative, to produce or provide such information as is available. Failure to provide the information at that time may result in the initiation of disciplinary proceedings against you up to and including removal. Applicants in such cases may be refused employment.

Disclosure of information by present or prospective Government contractors is also voluntary, although failure to furnish the above requested information where the contract so provides may result in administrative sanctions, including disqualification to enter into a contract or termination of an existing contract.

_____  _____
Signature of Interviewer      Signature of Affiant

May 7, 2012                   7 May 2012
Date                          Place

: 00135